# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| LEKHA KEISTER, individually and on behalf of all others similarly situated,<br><br>      Plaintiff,<br><br> v.<br><br>TOYOTA MOTOR NORTH AMERICA, INC., a California corporation; TOYOTA MOTOR SALES, U.S.A., INC., a California corporation,<br><br>      Defendants. | Case No. _____<br><br>**CLASS ACTION COMPLAINT**<br><br>JURY TRIAL DEMANDED<br><br>1. Violation of New Jersey Consumer Fraud Act, N.J.Stat. Ann. § 56:8-2, *et seq.*<br>2. Fraudulent Concealment<br>3. Violation of Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq.*<br>4. Breach of Express Warranty<br>5. Breach of Implied Warranties<br>6. Negligence |

Plaintiff Lekha Keister ("Plaintiff"), by and through her counsel, brings this Class Action Complaint against Toyota Motor North America, Inc. and Toyota Motor Sales, U.S.A., Inc. (collectively, "Defendants" or "Toyota"), on behalf of herself and all others similarly situated, and alleges, upon personal knowledge as to her own actions and her counsel's investigations, and upon information and belief as to all other matters, as follows:

## NATURE OF THE CASE

1.   This is a consumer protection and automotive defect class action involving Toyota vehicles equipped with the defective 2AZ-FE engines.

2.   Defendants designed, manufactured, distributed, marketed, sold, and

leased vehicles equipped with 2AZ-FE engines ("Class Vehicles") to Plaintiff and the other Class Members.  The Class Vehicles include the following, without limitation: 2007-2011 Toyota Camry HV, 2007-2009 Camry, 2009 Corolla, 2009 Matrix, 2006-2008 RAV4, 2007-2008 Solara, 2007- 2009 Scion tC, and 2008-2009 Scion xB.

3.      Since 2009, if not earlier, Defendants knew the Class Vehicles contain one or more design and/or manufacturing defect, including, without limitation, defects contained in the Class Vehicles' engine that cause them to be unable to properly utilize engine oil and to improperly burn off and/or consume abnormally high amounts of oil (the "Defect").

4.      Motor oil functions as a lubricant for the moving parts in internal combustion engines.  The oil creates a film separating surfaces of adjacent moving parts to minimize direct contact, thereby decreasing heat caused by friction and reducing wear.  Motor oil also has important cleaning and sealing functions, and serves as an important medium for dissipating heat throughout the engine. As a result, the Class Vehicles need the proper amount of engine oil in order for the engine and its related parts to function properly and safely.

5.      The Defect is a safety concern because it prevents the engine from maintaining the proper level of engine oil, and causes voluminous oil consumption that cannot be reasonably anticipated or predicted.  Therefore, the

Defect is unreasonably dangerous to consumers because it can cause engine failure while the Class Vehicles are in operation at any time and under any driving conditions or speeds, thereby exposing the Class Vehicle drivers, their passengers, and others who share the road with them to serious risk of accidents and injury.

6.      Furthermore, because the Defect can cause the Class Vehicles to consume unacceptably high amounts of engine oil, the rate of oil consumption for some Class Vehicles can be as high as one (1) quart of oil or more per 200 miles driven.  The Defect thus requires the addition of substantial amounts of oil between scheduled oil changes and can result in engine damage.

7.      Plaintiff and the other Class Members reasonably expected that their Class Vehicles would not experience the Defect during foreseeable and normal usage, including, without limitation, the expectation that the Class Vehicles would not require unreasonably frequent oil changes/additions between scheduled oil changes and that the Class Vehicles would not suffer from a dangerous defect that could cause the Class Vehicles to unexpectedly seize during operation, thereby causing the potential for accidents and injuries.  These are the reasonable and objective expectations of consumers.

8.      Prior to purchasing the Class Vehicles, Plaintiff and the other Class Members did not know that the Class Vehicles suffered from the Defect and did

not contemplate that the Class Vehicles' engines would be unable to prevent

substantial amounts of oil from being consumed due to the Defects contained

therein and thereby requiring costly supplemental oil to be added between

scheduled oil changes, as well as other related repairs that can cost thousands of

dollars.

9.     Plaintiff is informed, believes, and thereon alleges that Defendants

knew or should have known that the Class Vehicles were and are defective and

suffer from the Defect and are not fit for their intended purpose of providing

consumers with safe and reliable transportation.  Nevertheless, Defendants have

actively concealed and failed to disclose the Defect to Plaintiff and the other

Class Members at the time of purchase or lease and thereafter.

10.     Plaintiff is informed, believes, and thereon alleges that as the number

of complaints about the Defect increased, in or about August of 2011, Defendants

acknowledged the existence of the engine defect to only their dealers in a

Technical Service Bulletin ("TSB") and continued to conceal it from the class

members.

11.     Although Toyota acknowledged in the TSB the existence of the

Defect in a significant population of the Class Vehicles, Toyota arbitrarily and

unfairly instructed its dealers not to perform the engine repairs identified in the

TSB under warranty unless the consumer's vehicle is consuming more than one

quart of oil after 1,200 miles of driving.

12.     Toyota's requirement that there be more than one quart of oil consumption within 1,200 miles of driving before engine repairs are covered under warranty is arbitrary and would require consumers to add/change oil multiple times in advance of Toyota's own recommended oil change interval of every 6 months or 5,000 miles.

13.     Plaintiff is informed, believes, and thereon alleges that Toyota's one quart per 1,200 miles of driving oil consumption precondition to any engine repairs is an arbitrary requirement that was designed by Toyota to deny legitimate warranty coverage for the Class Vehicles in an attempt to improperly shift the costs of repair of the defective engines to consumers.

14.     In short, Defendants knew and concealed the Defect that is contained in every Class Vehicle, along with the attendant dangerous safety problems and associated costs, from Plaintiff and the other Class Members at the time of sale and thereafter.

15.     This intentional omission has caused Plaintiff and the other Class Members to experience the Defect throughout the life of the Class Vehicles, including use within the warranty period.

16.     Had Plaintiff and the other Class Members known about the Defect at the time of sale or lease, as well as the associated costs related to the Defect

and/or the safety hazards described herein, Plaintiff and the Class Members would not have purchased the Class Vehicles or would have paid less for them.

17.    Moreover, despite notice of the Defect from various internal sources, Defendants have not recalled the Class Vehicles to repair the Defect, have not offered all of its customers a suitable repair or replacement free of charge, and have not offered to reimburse all Class Vehicles owners and leaseholders who incurred costs relating to the Defect, including costs related to inspections/diagnosis, repairs, and unreasonably frequent oil changes/additions between scheduled oil changes.

18.    As a result of their reliance on Defendants' omissions and/or misrepresentation, owners and/or lessees of the Class Vehicles have suffered ascertainable loss of money, property, and/or loss in value of their Class Vehicles.

19.    Plaintiff brings claims against Defendants individually and on behalf of a class of all other similarly situated purchasers of the Products for violations of the New Jersey Consumer Fraud Act, N.J. Stat. Ann. § 56:8-2, *et seq.* ("NJCFA"), fraudulent concealment, violations of the Magnuson-Moss Warranty Act, 15 U.SC. § 2301, *et seq.* ("MMWA"), breach of express warranty, breach of implied warranties, and negligence.

20.    Plaintiff seeks an order requiring Defendants to, among other things: (1) cease the unlawful omissions; (2) conduct a corrective advertising campaign

to alert the public of the Defect; (3) pay damages and restitution to Plaintiff and Class members in the amounts paid to repair the Class Vehicles; and (4) reimburse Plaintiffs and Class members for the loss of value of the Class Vehicles.

## JURISDICTION AND VENUE

21.     The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2), because the proposed class has more than 100 members, the class contains at least one member of diverse citizenship from Defendants, and the amount in controversy exceeds $5 million.

22.     The Court has personal jurisdiction over the Defendants because Defendants are authorized to, and conduct substantial business in, New Jersey, generally and this District, specifically.  Defendants have marketed, promoted, distributed, and sold the ClassVehicles in New Jersey.

23.     Venue is proper in the District Court of New Jersey pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events, acts, and omissions giving rise to these claims occurred in the District of New Jersey.

## PARTIES

24.     Plaintiff Lekha Keister is a New Jersey resident.  On February 15, 2010, Plaintiff purchased a 2007 Toyota RAV4, equipped with a 2AZ-FE engine as a Certified Toyota from Toyota of Morristown of Morristown, New Jersey for

a purchase price of $24,081.12 ("Subject Vehicle").  The Subject Vehicle came with a 3-year/36,000-mile Basic Warranty and a 5-year/60,000-mile Powertrain Warranty (the latter warranty specifically covered the "Engine.").

25.     At the time of the purchase, the Subject Vehicle had roughly 35,000 miles on the odometer.

26.     Plaintiff purchased this vehicle primarily for her personal, family, or household purposes.  This vehicle was designed, manufactured, sold, distributed, advertised, marketed, and warranted by Defendants.

27.     Plaintiff is currently the owner of the Subject Vehicle.

28.     During the time Plaintiff has owned the Subject Vehicle, Plaintiff has had to change the oil for her Toyota RAV4 before the recommended mileage for changing oil—every 6 months or 5,000 miles—because the oil light would come on.  At no time did Defendants tell Plaintiff about the Defect.

29.     Earlier this year, Plaintiff notified Toyota of Morristown about the Defect.  Toyota of Morristown added oil to the car and asked Plaintiff to come back if the light came on again.  Two months after this oil change, the oil light came on again.

30.     As a result, on June 6, 2014, Plaintiff took the car to Toyota of Morristown.  After an hour or so, Toyota of Morristown informed Plaintiff that the Subject Vehicle was burning three quarts of oil every two thousand miles

8

(since 2,000 miles had elapsed since they last filled the oil tank). Toyota of Morristown informed Plaintiff that the engine needed to be rebuilt and that it would cost Plaintiff $4,000.00.  Toyota of Morristown told Plaintiff it was not responsible for the cost of the repair as it was outside of Defendants' warranty.

31.      On June 16, 2014, Plaintiff notified Defendants' corporate office and talked to a representative of Defendants about the Defect.  Plaintiff requested that Defendants cover the cost of the repair or give Plaintiff a replacement vehicle of a different Toyota model— Plaintiff did not want another Toyota RAV4.  Plaintiff was told that Defendants would not cover the cost of the repair or give Plaintiff a replacement vehicle because the Subject Vehicle was outside of Defendants' warranty by 5,000 miles.

32.      Plaintiff paid the $4,000.00 to have the engine rebuilt in the Subject Vehicle.

33.      Defendant Toyota Motor North America, Inc. is a California Corporation with its principal place of business at 19001 South Western Avenue, Torrance, California 90501.

34.      Defendant Toyota Motor Sales, U.S.A., Inc. is a California Corporation with its principal place of business at 19001 South Western Avenue, Torrance, California 90501.

35.     Defendants manufacture and distribute the Defective Vehicles to consumers throughout the United States.

**TOYOTA HAS TOUTED ITS VEHICLES AS HAVING SUPERIOR QUALITY AND DESIGN, BUT THE FACTS SHOW THAT TOYOTA'S 2AZ-FE ENGINES ARE DEFECTIVE**

36.     Toyota came to America in 1957, establishing its headquarters in Hollywood, California in an old Rambler dealership.  Toyota quickly gained traction in the United States auto market and eventually became a leader.  In 2003, Toyota sold 6,780,000 vehicles and overtook Ford Motor Company to become second in annual sales behind only General Motors. Three years later, Toyota passed General Motors as the number one brand of cars sold in the United States, with 8,800,000 vehicles sold.

37.     Toyota is currently the world's largest manufacturer of vehicles.

38.     Toyota holds its brand out as synonymous with "innovation, quality and reliability."  http://www.toyota-global.com/innovation/quality/; https://www.facebook.com/toyota/info (last visited Aug. 26, 2014).  Toyota further states "[f]rom our associates and dealers to our suppliers and customers, our devotion to constant improvement results in an exceptional line of cars and trucks." https://www.facebook.com/toyota/info (last visited Aug. 26, 2014).

39.     Furthermore, Toyota promises that "[f]rom the early stages of the design process up until our cars roll off the assembly line, quality is key at Toyota.

You can see it in the materials, the fit and finish, and the innovative new technology that we put into each of our vehicles." http://www.toyota.com/quality (last visited Aug. 26, 2014).

40.     As its dedication to "continuous improvement," Toyota states: "Kaizen" means striving for "continuous improvement, and it's a philosophy that we stand by. At our factories, the production line is seen as a progression of customers, not employees – and each team member is responsible for passing along a perfect part or assembly to the next. Every team member has the authority and the responsibility to stop the line if a component or assembly doesn't meet our quality standards." http://www.toyota.com/quality (last visited Aug. 26, 2014).

## DEFENDANTS WERE AWARE OF THE DEFECT SINCE AT LEAST 2009, BUT HAVE FAILED TO PUBLICLY ACKNOWLEDGE, DIAGNOSE, AND RECTIFY THE DEFECT

41.     Defendants have ignored the numerous consumer complaints submitted to the NHTSA since at least 2009 that further evidence the prevalent Defect in Class Vehicles.

42.     Defendant has also ignored the numerous consumer complaints posted on the Internet that further evidence the prevalent Defect in Class Vehicles.. *See, e.g.*, http://www.consumeraffairs.com/automotive/toyota-rav4.html (last visited Aug. 26, 2014); http://forums.edmunds.com/discussion/9562/toyota/rav4/toyota-rav4-

11

burns-oil/p2  (last visited Aug. 26, 2014);

http://www.carcomplaints.com/Toyota/Camry/2007/engine/excessive_oil_consu

mption.shtml#84 (last visited Aug. 26, 2014).

43.     Furthermore, on August of 2011, Toyota released a service bulletin,

Toyota Technical Service Bulletin T-SB-0094-11 ("TSB").  The TSB[1] provides:

> Some 2006 – 2011 model year vehicles equipped with the 2AZ-FE engine
> may exhibit engine oil consumption. **The piston assembly has been**
> **changed to minimize oil consumption**. Use the following repair procedure
> to address this condition.

 (TSB) (emphasis added).

44.     The TSB recommends an oil consumption test. If the results of this

oil consumption test show that the consumption rate is greater than one quart per

1,200 miles of driving, it states that the repair procedure should be performed.  In

the repair procedure, the piston and piston ring set are replaced to prevent the

excessive oil consumption for the Class Vehicles.

45.     The TSB was issued only to authorized Toyota dealers and was

never issued to the general public or the owners and lessees of the Class Vehicles.

---

[1]      The TSB applies to the following vehicles:  2007–2011 Toyota Camry HV
(Hybrid), 2007–09 Toyota Camry, 2009 Toyota Corolla, 2009 Toyota Matrix,
2006–08 Toyota RAV4,2007–08 Toyota Solara, 2007–09 Scion tC, and 2008–09
Scion xB.

46.     Despite their knowledge of the Defect, when owners or lessees of Class Vehicles specifically complained to Defendants about the oil consumption engine defect, Defendants' policy is to first deny that there is a known problem and to assert that losing abnormally high amount of oil is normal.

47.     Customers have reported the Defect in the Class Vehicles to Defendants directly and through their dealers.  Defendants are fully aware of the Defect contained in the Class Vehicles.

48.     Despite this, Defendants have failed to disclose and actively concealed the existence and nature of the Defect from Plaintiff and the other Class Members at the time of purchase and thereafter.  Specifically, Defendants have: (a) failed to disclose, at and after the time of purchase and thereafter, any and all known material defects or material nonconformities of the Class Vehicles, including the Defect and, among others, the frequent supplemental oil costs between regularly scheduled oil changes, as well as repairs that can cost in the thousands of dollars; (b) failed to disclose at the time of purchase that the Class Vehicles and their engines were not in good working order, were defective, and were not fit for their intended purpose; and  (c) failed to disclose or actively concealed the fact that the Class Vehicles and their engines were defective as a result of the Defect, despite the fact that Defendants learned of such defects prior to the first Class Vehicles being sold.

13

49.     Defendants have caused Plaintiff and the other Class Members to expend money at its dealerships or other third-party repair facilities and/or take other remedial measures related to the Defect in the Class Vehicles, such as carrying containers of oil with them at all times.

50.     Defendants have not recalled the Class Vehicles to repair the defective engines and their Defect, and have not offered to reimburse Class Vehicle owners and leaseholders who incurred costs relating to oil consumption and related problems.

51.     Plaintiff and the other Class Members reasonably did not expect their vehicles to require the addition of quarts of oil between regularly scheduled oil changes.

52.     Plaintiff and the other Class Members expect and assume that Defendants will not sell or lease vehicles with known defects, such as the Defect, and will disclose any such defects to its consumers before they purchase the Class Vehicles.  They do not expect Defendants to fail to disclose the Defect to them, or to continually deny the defect.

53.     Consequently, Class Members have not received the value for which they bargained when they purchased or leased the Class Vehicles.

54.     As a result of the Defect, the value of the Class Vehicles has diminished, including without limitation the resale value of the Class Vehicles.

14

## THE DEFECT IN PLAINTIFF'S VEHICLE

55.     Plaintiff purchased the Subject Vehicle equipped with a 2AZ-FE engine.

56.     Plaintiff relied on the existence and length of Defendant Toyota Motor Vehicles, U.S.A., Inc.'s express warranty, including Toyota's 5-year/60,000-mile powertrain warranty, which, among other items, covers the engine for the Subject Vehicle when she purchased the Subject Vehicle.

57.     Plaintiff's Subject Vehicle would consume all the oil in the Subject Vehicle's engine prior to Toyota's recommended oil change interval of every 5,000 miles or six months and in fact the check oil light would go on because of the Subject Vehicle's oil consumption.

58.     As a result of the Defect alleged herein, Plaintiff on multiple occasions has paid out of pocket to add supplemental oil between scheduled oil changes.

59.     At all times, Plaintiff, like all Class Members, has driven her vehicle in a foreseeable manner and in the manner in which it was intended to be used.

## TOLLING OF THE STATUTE OF LIMITATIONS

60.     All applicable statutes of limitation have been tolled by Defendants' knowing and active fraudulent concealment and denial of the facts alleged herein. Plaintiff and Class members did not discover, and did not know of facts that would

have caused a reasonable person to suspect, that Defendants did not report information within its knowledge to NHTSA or consumers, nor would a reasonable and diligent investigation have disclosed that Defendants had information in its possession about the existence and dangerousness of the Defect and opted to conceal that information.

61.     Since the Defect cannot be detected until it manifests itself, Plaintiff and Class members were not reasonably able to discover the Defect until after purchasing the Class Vehicles.  Plaintiff and Class members could not reasonably have been expected to learn of or discover Defendants' omissions concerning the Class Vehicles until after manifestation of the Defect, and only then because they would be forced to discover what happened to their vehicles.  Therefore, the discovery rule applies to all claims asserted by Plaintiff and Class members.

62.     Defendants have known about the Defect since at least 2009, if not earlier, have failed to alert Class members to the Defect, and have told Class members who reported the Defect that the mechanical failures caused by the Defect were attributable to other causes.

63.     Defendants were and remain under a continuing duty to disclose to the NHTSA, Plaintiff, and the Class the true character, quality, and nature of the Class Vehicles; that the Defect is based on dangerous, inadequate, and defective design and/or substandard materials; that it will require repair; that it poses a severe safety

concern in that the rapid burning of oil inside the engine can make the engine malfunction while the vehicle is moving; and that it diminishes the value of the Class Vehicles.

64.     Because of the active concealment by Defendants, any and all limitations periods otherwise applicable to Plaintiff's claims have been tolled and Defendant is estopped from relying on any statutes of limitation in its defense of this action.

## CLASS ACTION ALLEGATIONS

65.     Plaintiff seeks relief in her individual capacity and seeks to represent a class consisting of all others who are similarly situated.  Pursuant to Fed. R. Civ. P. 23(a) and (b)(2) and/or (b)(3), Plaintiff seeks certification of a class initially defined as follows:

> New Jersey consumers who at any time purchased or leased any 2007-2011 Toyota Camry HV, 2007-2009 Camry, 2009 Corolla, 2009 Matrix, 2006-2008 RAV4, 2007-2008 Solara, 2007-2009 Scion tC, or 2008-2009 Scion xB equipped with a 2AZ- FE engine.

66.     Excluded from the Class are Defendants and their subsidiaries and affiliates, Defendants' executives, board members, legal counsel, the judges and all other court personnel to whom this case is assigned, their immediate families, and those who purchased the Product for the purpose of resale.

67.     Plaintiff reserves the right to amend or modify the Class definition with greater specificity or division into subclasses after they have had an opportunity to conduct discovery.

68.     <u>Numerosity</u>.  Fed. R. Civ. P. 23(a)(1).  The Class is so numerous that joinder of all members is unfeasible and not practicable.  While the precise number of Class members has not been determined at this time, Plaintiff is informed and believes that many thousands of consumers have purchased the Products.

69.     <u>Commonality</u>.  Fed. R. Civ. P. 23(a)(2) and (b)(3).  There are questions of law and fact common to the Class, which predominate over any questions affecting only individual Class members.  These common questions of law and fact include, without limitation:

   a.     Whether Defendants violated the NJCFA, N.J. Stat. Ann. § 56:8-2, *et seq.*;

   b.     Whether Defendants were negligent;

   c.     Whether Defendants fraudulently concealed the Defect;

   d.     Whether Defendants violated the MMWA, 15 U.S.C. § 2301, *et seq.*;

   e.     Whether Defendants breached the express warranty;

   f.     Whether Defendants breached the implied warranties; and

      g.     The nature of the relief, including equitable relief, to which

Plaintiff and the Class members are entitled.

70.    <u>Typicality</u>.  Fed. R. Civ. P. 23(a)(3).  Plaintiff's claims are typical of the claims of the Class.  Plaintiff and all Class members were exposed to uniform practices and sustained injury arising out of and caused by Defendants' unlawful conduct.

71.    <u>Adequacy of Representation</u>.  Fed. R. Civ. P. 23(a)(4).  Plaintiff will fairly and adequately represent and protect the interests of the members of the Class.  Plaintiff's Counsel are competent and experienced in litigating class actions.

72.    <u>Superiority of Class Action</u>.  Fed. R. Civ. P. 23(b)(3).  A class action is superior to other available methods for the fair and efficient adjudication of this controversy since joinder of all the members of the Class is impracticable.  Furthermore, the adjudication of this controversy through a class action will avoid the possibility of inconsistent and potentially conflicting adjudication of the asserted claims.  There will be no difficulty in the management of this action as a class action.

73.    <u>Injunctive and Declaratory Relief</u>.  Fed. R. Civ. P. 23(b)(2).  Defendants' omissions are uniform as to all members of the Class.  Defendants have refused to act on grounds that apply generally to the Class, so that final

injunctive relief or declaratory relief is appropriate with respect to the Class as a whole.

## FIRST CAUSE OF ACTION

**(Violation of New Jersey Consumer Fraud Act, N.J. Stat. Ann. § 56:8-2, *et seq.*)**

74.     Plaintiff incorporates by reference and re-alleges all preceding factual paragraphs.

75.     The NJCFA protects consumers against "any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise . . . ." N.J. Stat. Ann. § 56:8-2

76.     Plaintiff and Class Members are consumers who purchased and/or leased Class Vehicles for personal, family, or household use.

77.     Prior to Plaintiff and Class Members' purchase of the Class Vehicles, Defendants violated the NJCFA by affirmatively representing that the Class Vehicles are safe and reliable despite Defendants' knowledge of the Defect, and that the Class Vehicles were warranted against defects in materials and workmanship without intending to honor their warranties.  Defendants also

engaged in unlawful conduct in violation of the NJCFA by making knowing and intentional omissions.

78.     Defendants knowingly failed to disclose the Defect in the Class Vehicles in order to secure the sale of these vehicles, and to offer them at a premium price.  Defendants knew or should have known the Class Vehicles were defectively designed or manufactured, posed safety risks, and were unsuitable for their intended use.  Defendants did not fully and truthfully disclose to its customers the true nature of the Defect, omitting material facts that they were under a duty to disclose to Plaintiff and Class Members.

79.     Plaintiff and Class Members reasonably expected that the Class Vehicles would not be defectively designed such that the Defect would occur, and Plaintiff and Class Members reasonably expected Defendants to honor their warranty obligations as represented at the time of purchase.

80.     As a result, Plaintiff and Class Members were fraudulently induced to lease and/or purchase the Class Vehicles with the Defect and all of the resultant problems. These facts that Defendants concealed were solely within their possession.

81.     Defendants intended that Plaintiffs and all Class members rely on the acts of concealment and omissions, so that they would purchase the Class Vehicles.

21

82.      If Plaintiff and Class Members knew about the Defect, they would not have purchased or leased the Class Vehicles or would have paid much less for them, and would not have paid Defendants for repairs associated with the Defect.

83.      Defendants' conduct caused Plaintiffs and Class members to suffer an ascertainable loss. In addition to direct monetary losses, Plaintiffs and Class members have suffered an ascertainable loss by receiving less than what was promised.

84.      Pursuant to N.J. Stat. Ann. § 56:8-20, Plaintiff will serve the New Jersey Attorney General with a copy of this Complaint.

## SECOND CAUSE OF ACTION

### (Fraudulent Concealment)

85.      Plaintiff incorporates by reference and re-alleges all preceding factual paragraphs.

86.      Defendants concealed material facts concerning the Defect before, during, and after the sale of the Class Vehicles to Plaintiff and Class members.

87.      Defendants had a duty to disclose the Defect because it was known only to Defendants, who had superior knowledge and access to the facts, and Defendants knew it was not known to or reasonably discoverable by Plaintiff and Class members.  These concealed facts were material because they directly impact the safety of the Class Vehicles.

88.     Defendants made material omissions concerning a presently existing or past fact.  For example, Defendants did not fully and truthfully disclose to its customers the true nature of the inherent design defect with the 2AZ-FE engine that causes the Defect, which was not readily discoverable until years later, often after the warranty has expired.

89.     As a result, Plaintiffs and the other Class members were fraudulently induced to lease and/or purchase the Class Vehicles with the said design defects and all of the resultant problems.

90.     Defendant actively concealed these material facts, in whole or in part, to protect its profits and avoid a costly recall, and it did so at the expense of Plaintiff and the Class.

91.     Plaintiff and the Class were unaware of these concealed material facts and would not have acted as they did if they had known of the concealed facts. Plaintiff's and Class members' actions were justified.  Defendants were in exclusive control of the material facts and the public, Plaintiff, and the Class did not know of these facts prior to purchasing the Class Vehicles.

92.     Because of the concealment of the facts, Plaintiff and the Class sustained damage because they purchased and retained Class Vehicles that are now diminished in value from what they would have been, had Defendants timely disclosed the Defect.

93.     Defendants' acts were done maliciously, oppressively, deliberately, with intent to defraud, in reckless disregard of Plaintiff's and Class members' rights and wellbeing, and to enrich Defendants.  Defendants' conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## THIRD CAUSE OF ACTION

**(Violation of Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq.*)**

94.     Plaintiff incorporates by reference and re-alleges all preceding factual paragraphs.

95.     Plaintiff and Class members are "consumers" within the meaning of the MMWA, 15 U.S.C. § 2301(3).

96.     Defendants are each a "supplier" and "warrantor" within the meaning of the MMWA, 15 U.S.C. § 2301(4)-(5).

97.     The Class Vehicles are "consumer products" within the meaning of the MMWA, 15 U.S.C. § 2301(1).

98.     Defendants' New Vehicle Limited 3-year/36,000-mile Basic Warranty and 5-year/60,000-mile Powertrain Warranty are "written warranties" within the meaning of 15 U.S.C. § 2301(6).  The Powertrain Warranty "covers repairs for 60 months/60,000 miles needed to correct defects in materials or workmanship" for various components, notably the "Engine," supplied by Toyota.

99.     Defendants breached the express warranties by: (a) extending a 3-year/36,000-mile Basic Warranty and a 5-year 60,000-mile Powertrain Warranty with the purchase or lease of the Class Vehicles, thereby warranting to repair or replace any part defective in material or workmanship at no cost to the owner or lessee; (b) selling and leasing Class Vehicles with engines that were defective in material and workmanship, requiring repair or replacement within the warranty period; and (c) refusing and/or failing to honor the express warranties by repairing or replacing, free of charge, the engine or any of its component parts.

100.     Plaintiff and the other Class Members relied on the existence and length of the express warranties in deciding to purchase or lease the Class Vehicles.

101.     The amount in controversy of Plaintiff's individual claim meets or exceeds the sum or value of $25.  In addition, the amount in controversy meets or exceeds the sum or value of $50,000 (exclusive of interests and costs) computed on the basis of all claims to be determined in this suit.

102.     Resorting to any informal dispute resolution procedure and/or affording Defendants a reasonable opportunity to cure its breach of written warranties to Plaintiff is unnecessary and/or futile.  At the time of sale to Plaintiff, Defendants knew, should have known, or was reckless in not knowing of its omissions concerning the Defect, but nevertheless failed to rectify the situation and/or disclose it to Plaintiff.  Moreover, the remedies available through any

informal dispute resolution procedure would be wholly inadequate under the circumstances.  Accordingly, any requirement under the MMWA or otherwise that Plaintiff resort to any informal dispute resolution procedure and/or afford Defendants a reasonable opportunity to cure their breach of written warranties is excused and, thereby, deemed satisfied.

103.    As a direct and proximate result of Defendants' breach of written warranties, Plaintiff and Class members sustained damages and other losses. Defendants' conduct caused Plaintiff's and Class members' damages and, accordingly, Plaintiff and Class members are entitled to recover damages, specific performance, diminution in value, costs, attorneys' fees, rescission, and/or other equitable relief as appropriate.

## FOURTH CAUSE OF ACTION

### (Breach of Express Warranty)

104.    Plaintiff incorporates by reference and re-alleges all preceding factual paragraphs.

105.    Plaintiff brings this claim individually and on behalf of the Class.

106.    Plaintiff, and each member of the Class, formed a contract with Defendants at the time Plaintiff and the other members of the Class purchased the Class Vehicles.  The terms of that contract include the promises and affirmations to provide vehicles free of "defects in materials or workmanship."  This express

warranty became part of the basis of the bargain and is part of a standardized contract between Plaintiff and the members of the Class on the one hand, and Defendants on the other.

107.    All conditions precedent to Defendants' liability under this contract have been performed by Plaintiff and the Class.

108.    Defendants breached the terms of this contract, including the express warranty, with Plaintiff and the Class by not providing a vehicle that could provide the benefits described above (being free from defects, notably the Defect).

109.    Plaintiff and the other Class Members relied on the existence and length of the express warranties in deciding to purchase or lease the Class Vehicles.

110.    Plaintiff and the other Class Members (or the prior owners of their Class Vehicles) notified Defendants of the breach within a reasonable time and/or were not required to do so.  Defendants were also on notice of the Defect from, among other sources, the complaints and service requests for oil consumption they received from Class Members and their dealers.

111.    As a result of Defendants' breach of its express warranty, Plaintiff and the Class have been damaged in the amount of the repair costs associated with the Defect, as well as their vehicles' diminished value as a result of the Defect.

## FIFTH CAUSE OF ACTION

### (Breach of Implied Warranties)

112.     Plaintiff incorporates by reference and re-alleges all preceding factual paragraphs.

113.     Plaintiff brings this claim individually and on behalf of the Class.

114.     Plaintiff, and each member of the Class, formed a contract with Defendants at the time Plaintiff and Class members purchased the Class Vehicles.

115.     Defendants impliedly warranted that the Class Vehicles were of merchantable quality and fit for such use.  This implied warranty included, among other things: (i) a warranty that the Class Vehicles and their engines were manufactured, supplied, distributed, and/or sold by Defendants were safe and reliable for providing transportation and would not consumer abnormally high amount of oil between scheduled oil changes; and (ii) a warranty that the Class Vehicles and their engines would be fit for their intended use while the Class Vehicles were being operated.

116.     Nevertheless, the Class Vehicles and their engines at the time of sale and thereafter were not fit for their ordinary and intended purpose of providing Plaintiff and the other Class Members with reliable, durable, and safe transportation.  Instead, the Class Vehicles are defective, including the defective design and/or manufacture of their engines that suffer from the Defect alleged

28

herein.

117.    These implied warranties became part of the basis of the bargain, and were part of a standardized contract between Plaintiff and the members of the Class on the one hand, and Defendants on the other.

118.    All conditions precedent to Defendants' liability under these contracts have been performed by Plaintiff and the Class.

119.    Defendants breached the terms of these contracts with Plaintiff and the Class, including the implied warranties of merchantability and fitness for a particular purpose, by not providing vehicles that were fit for the purpose of safe driving and were inadequately advertised due to Defendants' failure to disclose the Defect.

120.    As a result of Defendants' breach of its implied warranties, Plaintiffs and the Class have been damaged in the amount of the repair costs associated with the Defect, as well as their vehicles' diminished value as a result of the Defect.

## SIXTH CAUSE OF ACTION

### (Negligence)

121.    Plaintiff incorporates by reference and re-alleges all preceding factual paragraphs.

122.    Defendants had a duty to their customers to design, manufacture, market, and provide vehicles that, in their ordinary operation, are reasonably safe

for their intended uses.  Defendants had a duty to adequately test the vehicles'

safety before selling millions to consumers worldwide.

123.    At all times relevant, Defendants sold, marketed, advertised,

distributed, and otherwise placed Defective Vehicles into the stream of commerce

in an unlawful, unfair, fraudulent, and/or deceptive manner that was likely to

deceive the public.

124.    Defendants were negligent, and breached the above duties owed to

Plaintiff and Class members by selling to Plaintiff and Class members Class

Vehicles that contain a Defect that is unreasonably dangerous to consumers

because it can cause engine failure while the Class Vehicles are in operation at any

time and under any driving conditions or speeds, thereby exposing the Class

Vehicle drivers, their passengers, and others who share the road with them to

serious risk of accidents and injury.

125.    As direct and proximate causes of Defendants' breaches, Plaintiff and

the Class have been damaged including, but not limited to, the cost of repairs

required due to the oil consumption Defect, the financial loss of owning the

Defective Vehicles that are unsafe, and being subjected to potential risk of injury.

## **REQUEST FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of the other members of the Class proposed in this Complaint, respectfully requests that the Court enter judgment in their favor and against Defendants, as follows:

A.     Declaring that this action is a proper class action, certifying the Class as requested herein, designating Plaintiff as Class Representative and appointing the undersigned counsel as Class Counsel;

B.     Ordering Defendants to pay actual damages (and no less than the statutory minimum damages) and equitable monetary relief to Plaintiff and the other members of the Class;

C.     Ordering Defendants to pay punitive damages, as allowable by law, to Plaintiff and the other members of the Class;

D.     Ordering Defendants to pay statutory damages, as allowable by the statutes asserted herein, to Plaintiff and the other members of the Class;

E.     Awarding injunctive relief as permitted by law or equity, including enjoining Defendants from continuing the unlawful practices as set forth herein, and ordering Defendants to engage in a corrective recall campaign;

F.     Ordering Defendants to pay attorneys' fees and litigation costs to Plaintiff and the other members of the Class;

G.     Ordering Defendants to pay both pre- and post-judgment interest on

31

any amounts awarded; and

    H.    Ordering such other and further relief as may be just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury of all claims in this Complaint so triable.

Dated:  August 29, 2014          Respectfully submitted,

                                **AHDOOT & WOLFSON, PC**

                                 s/ Bradley K. King
                                Bradley K. King (NJ Bar # 081472013;
                                CA Bar # 274399)
                                Tina Wolfson (CA Bar # 174806)
                                Robert Ahdoot (CA Bar # 172098)
                                Theodore W. Maya (CA Bar # 223242)
                                1016 Palm Avenue
                                West Hollywood, California 90069
                                Tel: 310-474-9111
                                Fax: 310-474-8585
                                Email: bking@ahdootwolfson.com
                                twolfson@ahdootwolfson.com
                                rahdoot@ahdootwolfson.com
                                tmaya@ahdootwolfson.com

                                Counsel for Plaintiff,
                                Lekha Keister